UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SERGEY SINYAYEV, <br><br> Petitioner, <br><br> v. <br><br> PAMELA BONDI, Attorney General of the United States, et al., <br><br> Respondents. | CASE NO. 2:25-cv-02746-JNW <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## 1.  INTRODUCTION

On November 17, 2025, Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner Sergey Sinyayev, a 67-year-old noncitizen from the former U.S.S.R., during a "knock and talk." ICE agents asked him if he would voluntarily come with them to their office to complete paperwork, and he consented until they attempted to handcuff him, at which point he withdrew his consent. It appears the agents then arrested Sinyayev for refusing to be voluntarily handcuffed. He has remained in ICE detention since November 17 and filed a Petition for Writ of Habeas Corpus on December 31, 2025. For the reasons below, the Court GRANTS IN PART Sinyayev's petition and ORDERS his release.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

## 2. BACKGROUND

Sinyayev was born in the North Caucasus mountains in the former U.S.S.R. He entered the United States as a refugee in 1992 and became a permanent resident in 1993. In 2005, Sinyayev was convicted of a sexual offense, and as a result, an Immigration Judge ordered him removed from the United States. On June 16, 2009, ICE released Sinyayev on an Order of Supervision ("OSUP") because it could not remove him to Russia; Sinyayev is stateless.

According to ICE, on November 17, 2025, its agents went to the assisted living facility where Sinyayev resides to "conduct a knock and talk." Dkt. No. 8-3 at 3. Then, the agents asked Sinyayev to "come with them to the [ICE] facility to handle some documentation." *Id*. He accompanied them voluntarily to their car. At that point, even though he was not under arrest, the agents told him that "for his safety and theirs, handcuffs would be placed on him for a safety measure." *Id*. At that point, Sinyayev withdrew his consent to go with them, but the agents still continued to handcuff him. According to the agents, Sinyayev became "physically and verbally aggressive" with them, and so they "appl[ie]d defensive hand techniques" to "gain physical control" of him. *Id*. After the incident, Sinyayev needed medical attention. *Id*. ICE detained Sinyayev.

Two weeks later, on December 1, 2025, ICE notified Sinyayev that it had revoked his OSUP and that he would remain detained. Dkt. No. 8-2. The post-detention notice explains that "changed circumstances" support the revocation of Sinyayev's OSUP because (1) "ICE . . . determined that [he] c[ould] be expeditiously removed from the United States," and (2) he "assaulted [a] border patrol agent by

striking the agent in the face with [his] hand." *Id.* at 2. Sinyayev denies the allegation that he assaulted an agent. While the Government suggests that it revoked Sinyayev's OSUP because he failed to register as a sex offender, that is incorrect. *See id*. ICE continues to detain Sinyayev at the Northwest ICE Processing Center.

### 3.  DISCUSSION

**3.1  Legal standard.**

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

In addition to habeas relief, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th

Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

A plaintiff seeking a permanent injunction must demonstrate "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 3.2    The OSUP revocation violated Sinyayev's due process rights.

Sinyayev's detention violates due process because ICE revoked his OSUP and re-detained him without pre-deprivation notice or a hearing.

Under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest to determine what process is constitutionally required. This Court has applied that test and finds that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's order of supervision and re-detaining them. *See Ledesma Gonzalez*, Case No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *7 (W.D. Wash. Oct. 7, 2025).

Courts in this district and elsewhere have repeatedly so held. *See, e.g., Aslan v. Wamsley et al.*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (applying *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976))); *Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Tesara v. Wamsley*, Case No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez*, 2025 WL 2841574, at *8–9. Additionally, the Court agrees that a "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *Id.* at 8 (quoting *E.A. T.-B.*, 795 F. Supp. 3d at 1324). The Court finds no reason to distinguish this case from similar cases, in which ICE revoked orders of supervision without providing pre-deprivation notice or an opportunity to be heard.

The Government argues that "pre-deprivation hearings are not mandated by the due process clause where the rationale for the detention is to effectuate the order of removal." Dkt. No. 6 at 11. Even if that rationale were accurate, it doesn't

help the Government here because the evidence shows that ICE revoked Sinyayev's OSUP based on its finding that he "assaulted [a] patrol agent" on November 17, 2025—an allegation he denies. Because ICE revoked Sinyayev's OSUP and re-detained him without pre-deprivation notice and an opportunity to be heard, it violated his procedural due process rights. Sinyayev must be released.

### 3.3  Claims the Court declines to reach.

Sinyayev argues that his continued detention violates due process under *Zadvydas*, because there is no significant likelihood he will be removed in the reasonably foreseeable future. Sinyayev makes a compelling argument: Russia has already refused to accept him, the State Department has designated Russia as "uncooperative," and as of the Government's return, and ICE had not even submitted a travel document request. Dkt. No. 7 ¶¶ 8–9; Dkt. No. 11-3 at 8. However, because the parties dispute whether Sinyayev's current and prior periods of detention may be aggregated for purposes of *Zadvydas*'s six-month presumptive threshold—a question that doesn't appear to have a binding answer—the Court declines to reach this claim.

Sinyayev argues that his detention violates substantive due process for several additional reasons. *See* Dkt. No. 1 at 15, 25. Because the procedural due process violation independently requires his release, the Court need not reach these claims either.

Finally, because these constitutional grounds are dispositive, the Court need not reach Sinyayev's separate claim that the OSUP revocation was arbitrary and

capricious under the Administrative Procedure Act and the Immigration and Nationality Act.

**3.4    The Government must follow the law if it re-detains Sinyayev.**

Having found a due process violation, the Court must determine whether injunctive relief is appropriate. Sinyayev has shown that he suffered irreparable harm and that such harm is likely to continue or recur absent injunctive relief to protect against further constitutional violations. ICE has already detained him once without process. He has been identified as a target for removal. And absent injunctive relief, he may be subject to the same due process violation again. *See eBay*, 547 U.S. at 391. Monetary damages would be inadequate to remedy the deprivation of liberty, and requiring the Government to follow constitutional procedures imposes no undue hardship. The public interest favors compliance with the law. Several courts in this district have granted similar relief under comparable circumstances. *See, e.g.*, *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819 (W.D. Wash. Jan. 23, 2026), *6; *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026) (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same).

Accordingly, the Court prohibits the re-detention of Sinyayev unless the Government first provides written notice of the basis for the proposed re-detention

and an immigration court hearing is held to determine whether detention is appropriate.

Sinyayev separately asks the Court to enjoin the Government from re-arresting him before it has a travel document for his removal. He cites no authority for adding this requirement, and the re-detention protections ordered above adequately guard against the abuse he fears. Accordingly, this request is denied.

**3.5    The Government must follow the law governing third-country removal.**

Sinyayev argues that the Government may not remove him to any third country without providing constitutionally and statutorily adequate notice and a meaningful opportunity to contest the designation in reopened removal proceedings. Dkt. No. 1 at 26. The Government's primary response is that Sinyayev's requested relief is foreclosed by the Supreme Court's stay of the preliminary injunction in *D.V.D. v. Department of Homeland Sec.*, 145 S. Ct. 2153 (2025). The Court previously addressed and rejected the Government's argument in *Arenado-Borges v. Bondi*, Case No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *5–6 (W.D. Wash. Dec. 19, 2025). It does so again for the same reasons.

The Government also argues that "Petitioner's claim of fear of removal to a third country is already protected under existing DHS ["Department of Homeland Security"] policy." Dkt. No. 6 at 11. Notably, it later concedes that the protections Sinyayev seeks are *not* guaranteed by DHS policy. *Id.* at 12. Numerous courts, including this one, have held that when the Government designates new, third countries for removal after a noncitizen's removal proceedings have concluded, due

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 8

process requires the Government to provide the noncitizen with adequate notice and a meaningful opportunity to be heard in reopened removal proceedings. *Arenado-Borges*, 2025 WL 3687518, at *6–7 (collecting cases). The Government offers no reason why the Court should deviate from its prior holding on this point. Accordingly, the Court applies the same reasoning here as it did in *Arenado-Borges v. Bondi*. *Id*.

Sinyayev also argues that the Government may not remove him to any third-country because the Government's third-country removal policy is unconstitutionally punitive. The Government has just begun to review Sinyayev's case for third-country removal and has not selected a third country (or list of third countries) for potential removal. And Sinyayev has offered no evidence to support his claim. *See* Dkt. No. 11-4. On this record, the Court cannot find that Sinyayev's third-country removal would be unconstitutionally punitive. To the extent that Sinyayev's constitutional challenge to the Government's third-country removal policy is a facial one, he has not adequately explained or supported that challenge. Accordingly, the claim is denied without prejudice.

### 4. CONCLUSION

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED IN PART. The Court ORDERS as follows:

1. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to the conditions of his prior OSUP.
2. Petitioner may not be re-detained unless (a) Respondents provide Petitioner with written notice of the basis for the proposed re-detention in

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

   advance; and (b) an immigration court hearing is held to determine whether detention is appropriate.

3. Respondents must REFRAIN from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.

4. Within FORTY-EIGHT (48) hours of his release, Respondents must PROVIDE the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

5. Petitioner's request for an order enjoining third-country removal as unconstitutionally punitive is DENIED without prejudice.

6. Petitioner's request for an order enjoining the Government from re-detaining him without first obtaining travel documents is DENIED without prejudice.

Dated this 25th day of February, 2026 at 4:45 p.m.

Jamal N. Whitehead
United States District Judge